UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 14-20507-CIV-ROSENBAUM**

JASON H. WEBER and XANDER LAW
GROUP, P.A.,

    Appellants,

v.

MANCUSO LAW, P.A., and INFOLINK
GLOBAL CORPORATION,

    Appellees.
_____/

## OPINION AND ORDER

This is an appeal by Appellants Jason H. Weber and Xander Law Group, P.A., of the Order Awarding Sanctions Against Leary Entities and Their Counsel Under 11 U.S.C. § 105 [BKC ECF No. 1063],[1] entered on December 16, 2013, in the United States Bankruptcy Court for the Southern District of Florida ("Bankruptcy Court"). The Court has carefully considered the briefs and all supporting and opposing filings and is otherwise fully advised in the premises. For the reasons set forth below, the Court affirms the order below.

### I. Background

This action arises from a Chapter 11 bankruptcy proceeding currently pending before the Honorable A. Jay Cristol. On February 12, 2012, the Bankruptcy Court entered an order confirming

---

[1] Unless otherwise noted, the facts are derived from various documents filed in this docket and the underlying bankruptcy docket. These facts, which appear to be undisputed, are provided for background purposes only and do not constitute findings of fact by the Court. For purposes of clarity, documents filed in this docket, 14-20507-RSR, will be cited as "ECF No.____" and documents filed in the underlying bankruptcy docket, 10-26423-AJC, will be cited as "BKC ECF No, ____."

the debtors' Chapter 11 reorganization plan.  Pursuant to the plan, Appellee Infolink Global became the Reorganized Debtor and took control of the debtors' business operations, assets, and affairs.  A defendant in a corollary adversary proceeding, Prieur Leary, and his purported company, Prontocom, Inc., subsequently filed an appeal of the Confirmation Order, which was assigned to the Honorable Kenneth A. Marra in the United States District Court for the Southern District of Florida.  *See Leary v. Infolink*, No. 1:12-cv-21339-KAM (S.D. Fla.).  Although Judge Marra initially affirmed the Bankruptcy Court's Order, upon motion for reconsideration, Judge Marra reversed, remanding the case to the Bankruptcy Court "for the limited purpose of making factual findings as to the relationship between Leary and Prontocomm."  *Leary v. Infolink*, No. 1:12-cv-21339-KAM, ECF No. 41 at 2 (S.D. Fla. July 29, 2013).  Judge Marra further directed the Bankruptcy Court to issue a new final judgment after making its factual finding.  *Id.*  Following the District Court's remand, on August 6, 2013, the Bankruptcy Court entered an order reopening the case and setting a status conference in order to discuss with the parties how the action would proceed.  BKC ECF No. 968.

      Notwithstanding the District Court's limited order of remand and the Bankruptcy Court's order setting a status conference on the matter, on August 29, 2013, Appellant Jason H. Weber—counsel for several of the entities subject to the Confirmation Order[2]—sent cease-and-desist letters to Appellee Infolink Global's employees and landlord, informing them that the bankruptcy Confirmation Order had been reversed and that, as a result, "any and all assets that were transferred to and vested in Infolink Global, Inc., [must] be immediately restored to the respective owners prior to the confirmation."  BKC ECF No. 973-1.  The letters directed Infolink Global's employees to

---

[2] These entities are Infolink Communication Services, Inc., Infolink Panama, S.A., Pronto Group, LLC, and Pronto Group, Inc., collectively referred to by the Bankruptcy Court as the "Leary Entities."

cease all business operations and threatened legal action for "failure to comply with the District Court's Order." *Id.* Weber also directed Infolink Global's landlord to evict Infolink Global from its business premises, claiming that his clients had the right to immediate possession of the property. *Id.* It also appears that Weber directed the registrar of Infolink Global's registered web domains to transfer all of the web domains to Weber's law firm. In addition to this correspondence, Weber filed a Notice of Effectuation of Transfers with the Bankruptcy Court [BKC ECF No. 971], proclaiming his clients' intent to "effectuate the return of all property that passed title pursuant to the null-and-void Confirmation Order." BKC ECF No. 971.

Following these actions, Infolink Global filed an emergency motion to prevent Weber and Xander Law Group, P.A.'s clients, collectively referred to as "the Leary Entities," from interfering with its business operations pending the Bankruptcy Court's remand status conference. *See* BKC ECF No. 973. The Bankruptcy Court granted the motion and set the matter for hearing, requiring Weber and the Leary Entities to appear and to show cause why they should not be held in contempt as a result of their "attempt to effectuate unauthorized transfers." BKC ECF No. 984. After the show-cause hearing, the Bankruptcy Court entered an order awarding sanctions against the Leary Entities and their counsel. In so ruling, the Bankruptcy Court found that although the parties did not act contemptuously in filing the Notice of Effectuation, they willfully and knowingly interfered with Infolink Global's business operations, and thus, sanctions were "justified and appropriate pursuant to the Court's inherent powers and statutory powers under 11 U.S.C. § 105." BKC ECF No. 1063 at 2. The Bankruptcy Court assessed sanctions totaling $12,798.20, an amount that reflects the attorney's fees that Infolink Global incurred in having to litigate the Notice of Effectuation and Order to Show Cause. *Id.* at 4. Appellants Jason Weber and Xander Law Group, P.A., now appeal

the Bankruptcy Court's Order.

## II. Jurisdiction

District courts enjoy jurisdiction over only three types of orders: (1) final orders, as described in 28 U.S.C. § 158(a)(1); (2) interlocutory appeals issued under 11 U.S.C. § 1121(d), as described in 28 U.S.C. § 158(a)(2); and, (3) with leave of the court, other interlocutory orders, as described in 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. P. 8001(b). *Tobkin v. Calderin*, No. 12-22692, 2012 WL 3609867, at *1 (S.D. Fla. Aug. 22, 2012). Here, the parties do not dispute that the sanctions order constitutes a final order subject to immediate review.

## III. Discussion

Appellants raise primarily three arguments on appeal: (1) 11 U.S.C.§ 105 does not authorize sanctions absent a finding of contempt; (2) the Bankruptcy Court's award of attorney's fees constituted unauthorized fee-shifting, and (3) the Bankruptcy Court impermissibly created federal common law in finding that Appellants tortiously interfered with Appellee's business operations. For the reasons discussed below, the Court rejects these arguments.

Title 11, United States Code, Section 105(a) imbues bankruptcy courts with statutory authority to sanction parties for contemptuous conduct. In particular, § 105 provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. Pursuant to this authority, a bankruptcy court may impose sanctions if a party violates a court order or rule or to prevent an abuse of process. 11 U.S.C. § 105(a); *see also In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1273 (11th Cir. 2009).

In addition to this statutory authority, a bankruptcy court also has the power to control the conduct of the parties who appear before it pursuant to its inherent powers. Indeed, it is a well-

settled principle that all federal courts, including bankruptcy courts, possess inherent authority to impose sanctions against attorneys and their clients. *Franken v. Mukamel*, 449 F. App'x 776, 778 (11th Cir. 2011) (citing *In re Walker*, 532 F.3d 1304, 1309 (11th Cir. 2008)). This intrinsic authority is "derived from the court's need to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (alterations in original) (citation and internal quotation marks omitted). The courts' inherent sanctioning power is well established and "reaches both conduct before the court and that beyond the court's confines." *In re Haque*, 395 B.R. 799, 803 (Bankr. S.D. Fla. 2008) (citing *Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. 787, 798 (1987)). Because of their potency, however, "inherent powers must be exercised with restraint and discretion." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1251 (11th Cir. 2006) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)) (internal quotation marks omitted). Thus, before a court can impose sanctions on an attorney under its inherent powers, "it must find the that lawyer's conduct constituted or was tantamount to bad faith." *Id.* (quoting *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002)) (internal quotation marks omitted).

Although Weber and Xander Law Group, P.A., urge this Court to conduct a *de novo* review of the Bankruptcy Court's Order, it has been clearly established that a bankruptcy court's decision to impose sanctions is reviewed for abuse of discretion. *See Franken*, 449 F. App'x at 778. Under this deferential standard, the Court merely asks "whether the court applied the wrong legal standard or made findings of fact that are clearly erroneous." *Id.*

Here, Weber and Xander Law Group, P.A., contend that because the Bankruptcy Court explicitly found that "neither Weber, nor his clients, acted contemptuously," no basis exists for the Bankruptcy Court's imposition of sanctions. This is simply incorrect. As detailed above, federal

courts possess inherent powers to sanction litigants and their counsel for bad-faith conduct, and this power "extends to a full range of litigation abuses." *Chambers*, 501 U.S. at 47. Thus, although the Bankruptcy Court determined that Weber and Xander Law Group, P.A., had not explicitly violated a court order, it found Appellants' conduct to be sufficiently reproachful to warrant sanctions. The Court finds no error in this determination.

In short, Weber and Xander Law Group, P.A., sought to capitalize on the purported "reversal" of the Chapter 11 Confirmation Order by laying claim to assets that had been transferred to Infolink Global under the reorganization plan. They took this action despite the fact that (1) Judge Marra's order specifically indicated that the case was to be remanded for a limited fact-finding purpose and (2) Judge Cristol had scheduled a status conference on the matter with the express purpose of discussing how the parties were to proceed in light of the District Court's remand. Weber and Xander Law Group, P.A.'s subsequent attempt to halt Infolink Global's business operations, have Infolink Global evicted from its business premises, and redirect its web domains could reasonably be found to be unjustified and tantamount to bad faith. Indeed, it appears to this Court that Weber and Xander Law Group, P.A., tried to rely on a mere technicality in order to circumvent the Bankruptcy Court's Confirmation Order. Although Weber and Xander Law Group, P.A., emphasize that they were simply advocating a "colorable legal position," "a finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or *mala fides*, the assertion of a colorable claim will not bar the assessment of attorney's fees." *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732 (9th Cir. 1995). Based on the underlying facts of this case, the Bankruptcy Court did not err in finding Weber and Xander Law Group, P.A.'s conduct sanctionable.

The Court also rejects Weber and Xander Law Group, P.A.'s assertion that the Bankruptcy Court's Order violates the "American Rule" with respect to fee-shifting.[3]  The Supreme Court has specifically held that "federal courts have inherent power to assess attorney's fee against counsel, *even though the so-called 'American Rule' prohibits fee shifting in most cases*." *Chambers*, 501 U.S at 45 (emphasis added).  In this regard, the Supreme Court has noted that a court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975)) (internal quotation marks omitted); *see also Bank of New York v. Sunshine-Jr. Stores, Inc. (In re Sunshine Jr. Stores, Inc.)*, 456 F.3d 1291, 1305 (11th Cir. 2006) ([I]t is within a court's discretion to assess attorney's fees on a party . . . for actions taken in bad faith.").  Moreover, such an award falls well within a court's inherent powers where, as here, the award is "directly tied to delays and protracted litigation caused by bad faith conduct."  *Sunshine,* 456 F.3d at 1305, 1316.  Here, the Bankruptcy Court did not abuse its discretion in assessing reasonable attorney's fees against Weber and Xander Law Group, P.A., and their clients for the additional litigation costs incurred as a result of their conduct.

Finally, Weber and Xander Law Group, P.A., argue that the Bankruptcy Court impermissibly created federal common law in finding that they "tortiously interfered" with Infolink Global's business operations and that such conduct violates Florida's litigation privilege.  The Court finds no merit in these arguments.  Contrary to Appellants' assertion, the Bankruptcy Court's Order did not hold Appellants liable for the tort of tortious interference; it simply concluded that Appellants'

---

[3] Under the "American Rule," parties are generally required to bear their own attorney's fees, and the prevailing party is not entitled to collect a reasonable attorneys' fee from the losing party.  *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975).

conduct was of a nature justifying monetary sanctions. Appellants' attempt to recharacterize the Order as a judgment for tort liability is wholly misguided.

Ultimately, the Court cannot conclude that the Bankruptcy Court abused its discretion in imposing sanctions against Weber and Xander Law Group, P.A., for their unauthorized attempt to seize Infolink Global's assets. A court abuses its discretion if it "applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *John Richards Homes Building Co. v. Adell (In re Adell)*, No. 03-23684-ALP, 2008 WL 746833, at *1 (M.D. Fla. March 18, 2008) (quoting *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1309 (11th Cir. 2001)) (internal quotation marks omitted). Short of that, an abuse-of-discretion standard recognizes that a range of choices exists within which the lower court will not be reversed even if this Court might have reached a different decision. *See id.* (citing *Sibert v. Allen*, 506 F.3d 1047, 1049 n.2 (11th Cir. 2007)). Here, the Bankruptcy Court was authorized to impose sanctions pursuant to its inherent authority. Moreover, the Court's review of the record does not establish that the Bankruptcy Court's factual findings were clearly erroneous. Accordingly, the Bankruptcy Court's Order is affirmed.

### IV. Conclusion

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that the Bankruptcy Court's Order is **AFFIRMED**, and the appeal is **DENIED**. The Clerk of Court shall **CLOSE** this case.

**DONE and ORDERED** at Fort Lauderdale, Florida, this 31st day of March 2014.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

copies to:
Counsel of record